```
_____ FILED _____ LODGED
_____ RECEIVED
Aug 20, 2025
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY
```

The Honorable David W. Christel

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

DOMINIQUE D. BUFFINGTON,

Defendant.

NO. MJ25-5329

COMPLAINT FOR VIOLATIONS
18 U.S.C. § 922(g)(1)

BEFORE, the Honorable David W. Christel United States Magistrate Judge, Tacoma, Washington, the undersigned complainant being duly sworn states:

## COUNT 1

### (Unlawful Possession of a Firearm)

On or about August 20, 2025, in King County, within the Western District of Washington, DOMINIQUE D. BUFFINGTON, knowing he had been convicted of the following crime punishable by a term of imprisonment exceeding one year:

i. *Manufacture/Delivery of Controlled Substances,* and *Possession of a Stolen Firearm,* in Thurston County Superior Court, convicted on or about May 7, 2015, under cause number 14-1-00243-6;

COMPLAINT - 1
*United States v. Buffington*

did knowingly possess, in and affecting interstate and foreign commerce, a firearm, that is: a Glock .45 Model 30S, that had been shipped and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 922(g)(1).

And the complainant states that this Complaint is based on the following information:

I, Cody White, a Task Force Officer with the Federal Bureau of Investigation ("FBI") in Tacoma, Washington, having been first duly sworn, hereby depose and state as follows:

## AFFIANT BACKGROUND & INTRODUCTION

1.      I am a commissioned Police Officer for the Lakewood Police Department (LPD) and a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI). Accordingly, I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been employed by the Lakewood Police Department since May 2017, most recently in the Major Crimes Unit. Upon joining the LPD, I completed 720 hours of training at the Basic Law Enforcement Academy, where I was trained in the areas of criminal investigations, narcotics investigation, interview skills, criminal law, criminal procedures, court orders, and search warrants.

2.      I have received additional training from my employer and other agencies. In December of 2019, I completed a 24-hour class on Interview Techniques in Policing. In May of 2022, I completed a 40-hour Shooting Reconstruction course. In October of 2022 I completed 40 hours of Crisis/Hostage Negotiator Training. In May of 2023, I also completed 32 hours of training at the Washington Homicide Investigators Association. In June of 2024, I also completed a two-week DEA Basic Narcotics Investigator course. My formal training includes a bachelor's degree in criminal justice with an emphasis in

COMPLAINT -2
*United States v. Buffington*

criminology from Dixie State University, where my coursework included classes in Criminal Procedure and Criminal Law. Prior to being a Police Officer, your affiant was a Community Corrections Officer for the Washington State Department of Corrections for almost three years, where your affiant gained additional training and experience. I have investigated numerous crimes involving robberies, assaults, burglaries, narcotics, rapes, et cetera. I have made hundreds of arrests and have conducted numerous interviews with persons in custody and with witnesses/victims of various crimes. I have gained valuable insight to methods and behavior commonly associated with illegal activity.

3.      The information in this Complaint is based on my personal participation in this investigation and information provided to me by other agents, officers, and witnesses, and information gained through my training and experience. Insofar as I have identified individuals in this Complaint, those identifications are made in good faith based on comparisons with Washington State Department of Licensing ("DOL") photographs, physical and electronic surveillance, as well as photographs maintained in law enforcement databases. Where translations from Spanish to English are set forth, the translations were provided to me by a law enforcement officer who is fluent in both Spanish and English. Except where specifically indicated with quotation marks, the descriptions of any conversations are summaries, and are not intended to present a verbatim recitation of the words used by the participants.

4.      As set forth below, based on the facts set forth in this Complaint, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1), distribution and possession with intent to distribute controlled substances (hereinafter, the "TARGET OFFENSES") have been committed, are being committed, and will be committed by DOMINIQUE D. BUFFINGTON.

5.      This Complaint is being presented electronically pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

COMPLAINT -3
*United States v. Buffington*

**SUMMARY OF THE INVESTIGATION**

5.      The United States, including the FBI, is conducting a criminal investigation of suspected drug trafficking in Western Washington. This investigation targeted individuals involved in distributing large quantities fentanyl in western Washington.

6.      In March of 2024, FBI agents and Task Force Officers (TFO) began investigating a Drug Trafficking Organization (DTO) that was operating in the Pierce County region of Washington. The initial investigation revealed that Bryant K. Moss (hereinafter, "Moss") played a large part in the operation of this DTO. Since March of 2024, investigators have conducted controlled purchases of fentanyl pills from Moss and members of the Moss DTO. Investigators also have seized multiple pounds of fentanyl powder, fentanyl pills and marijuana during the investigation that were being trafficked via commercial airlines.

6.      Dominique D. Buffington (hereinafter, "Buffington") has been known by investigators to be associate of Moss and other members of the Moss DTO for several years. Buffington has also been observed on social media with members of the Moss DTO since the start of this investigation.  Additionally, Moss and Buffington created a rap music video titled "WHEREYOUBEEN" which was posted on YouTube two years ago.  This music video was posted on Moss's YouTube page, with Moss going by the name "BJ-OT" and Buffington using the name "Buffy Baby."  It should be noted that throughout the music video Moss and Buffington allude to selling narcotics through their rap lyrics.

7.      Based on toll data and iMessage analysis, Buffington has also been in consistent communication with TT1, with the most recent communication being on April 29, 2025.  Investigators have also observed Buffington at Moss's residence via electronic surveillance, with the most recent being on March 10, 2025.

8.      Buffington has a prior felony conviction for manufacturing/delivering a controlled substance and possession of a stolen firearm. Based off Buffington's criminal

COMPLAINT - 4
*United States v. Buffington*

history and association with members within Moss's DTO, investigators believe that Buffington is also involved within the Moss DTO.

9. On October 25, 2024, subscriber information for the cellular number (206) 602-7399 was obtained from T-Mobile. The return showed that the listed subscriber was Dominique Buffington, with a provided address of 6104 Monterey LN SE., Lacey, Washington, with an activation date of October 7, 2024. The status of this cellular number was also listed as active.

<u>Buffington delivered drugs to Moss</u>

10. On March 10, 2025, U.S. District Judge Tiffany Cartwright authorized a Title III wiretap to collect the full content of wire and electronic communications for two of Moss's cell phones (TT1 and TT4) and wire communication for Williams's telephone (TT2). On April 8, 2025, U.S. District Judge Tiffany Cartwright re-authorized a Title III wiretap to continue collection for TT1, TT4, and TT2, which last until May 7, 2025.

11. On March 10, 2025, at 8:12pm, investigators intercepted an outgoing call from Moss (TT1) to Buffington on cellular number (206) 602-7399 (hereinafter, TT9). The following conversation was captured between TT1 and TT9:

TT9: O-TEEZY!

TT1: Yeah, I'm still out here bro... I don't feel too good right now.

TT9: Oh shit, how many you want?

TT1: Uhhm, how much, how much are they?

TT9: 20.

TT1: Shit, gimmie uhh. Get me like 13 of em.

TT9: I'll come, I'll come out there if I need to.

TT1: Nah, (unintelligible), it's good. I gotta take another hot bath and shower. It's good here, I got it here.

TT9: Uhmm.. The nigga with the 10s, that nigga live right by you. My lil nigga stay out there.

TT1: Oh, yeah yeah yeah yeah. Lemme get like 13 of them.

COMPLAINT -5
*United States v. Buffington*

TT9: He stay right there, right behind 76, or right behind that Shell right there.

TT1: You gon' get it from him for me, right?

TT9: I mean, (unintelligible) if I got to, but shit he stay right there.

TT1: Yeah, if you could, I don't feel good to drive right now that's what I'm sayin'.

TT9: Aight, aight, aight, you gon' be there for a second, because I ain't even in my car right now.

TT1: Yeah, nah it's-it's, come to the house. (Unintelligble) Come to the house, you're good.

TT9: Aight.

TT1: Alright.

12.     Investigators believe that this conversation between Moss and Buffington was about Moss purchasing narcotics from Buffington. I know from my training and experience that when Buffington mentions "the 10s" that he is referencing to prescription oxycodone. Buffington also appears to give the price of each oxycodone pill when he tells Moss that they're "20" when he is asked about the price. Buffington indicates that his connection for the "10s" lives near Moss behind the Shell station. Moss tells Buffington that he is too sick to drive and asked Buffington to pick them up for him and bring them to his house. Buffington agrees but tells him it might be a little while because he does not have his car. Moss tells him just to come to his house when he can. Approximately two hours after this call took place, at 10:25pm, investigators observed via electronic surveillance a subject that appeared visually consistent with Buffington arrive to Moss's residence and enter the residence. The subject was out of view for approximately 5 minutes then exited Moss's residence at 10:30pm and departed. Investigators believe this interaction was Buffington delivering the oxycodone to Moss as they discussed in the above described intercepted communication.

COMPLAINT -6
*United States v. Buffington*

UNITED STATES ATTORNEY
1201 PACIFIC AVE SUITE 700
TACOMA, WASHINGTON 98422
(253) 428-3800

Buffington and Moss discuss a narcotics transaction

13.     On March 11, 2025, at 9:39pm, investigators intercepted a wire communication from Buffington (TT9) to Moss (TT1).  The following was captured during the phone call:

TT1 - I'm gonna send something right now.

TT9 - You sent him the whole two or your mans was gonna send him one and you was finna send him one?

TT1 - Nah, my people gonna send him another hundred. The same people that sent him the first hundred. Just so you know that.

TT9 - Ahhh fuck, he gotta go back then. He just gave 'em to him and dipped.

TT1 - Oh he just gave him a hundred.

TT9 - Huh?

TT1 - He just gave him a hundred dollars?

TT9 - No, I'm saying my man gave your people the shit and I don't think my man got the money, the hundred from your mans.

TT1 - I'm about to send it to him. If he aint got, I'm sending it to him right now. I got you.

TT9 - I'm saying you want ten right or you want five?

TT1 - Right now, as we speak. He's sending it right now as we speak.

TT9 - I'm saying you wanted ten total or five?

TT1 - It don't matter. If he only gave him five, I won't send no more money.

TT9 - Alright alright.

TT1 - He only gave him five?

TT9 - I don't I don't know. He just said, "I gave it to him."

TT1 - Trying to see how many he gave him, so I know if I got to send him the money, the extra hundred or not

TT9 - Alright, I'm about to call this nigga.

TT1 - Alright.

COMPLAINT -7
*United States v. Buffington*

UNITED STATES ATTORNEY
1201 PACIFIC AVE SUITE 700
TACOMA, WASHINGTON 98422
(253) 428-3800

14.    Investigators believe that in this conversation Moss and Buffington discuss the sale of narcotics. Based on the context of this call, it appears both Moss and Buffington had other individuals act as "middlemen" responsible for the actual physical narcotics transaction, which investigators know is common within the Moss DTO.  Based off my training and experience, when Buffington says, "You sent him the whole two or your mans was gonna send him one and you was finna send him one," I believe that Buffington is trying to confirm whether Moss sent $200 or $100 and whether Moss's "man" was going to send the other $100. This is supported by Moss saying his "people" were going to send an additional hundred. Moss and Buffington go back and forth trying to determine whether their respective associates had exchanged 5 or 10 pills which would determine whether Moss needed to pay an additional $100. During the call intercepted on March 10, 2025, between TT1 and TT9, Buffington told Moss the price was $20 per pill. This is corroborated in this transaction where Moss would be purchasing five (5) pills for $100 or ten (10) pills for $200.  This is further be confirmed by Moss's response to Buffington at the end of the phone call when he says, "Trying to see how many he gave him, so I know if I got to send him the money, the extra hundred or not."  It appears that Moss was going to confirm the number of pills that were picked up by his associate to determine whether he needed to send an additional $100.

<u>Investigators intercept narcotics mailed to Buffington</u>

15.    On March 25, 2025, Postal Inspector (PI) Matthew Caldwell was alerted to priority mail parcel 9505 5066 7491 5083 8397 08 (hereinafter referred to as "subject parcel") for possibly containing narcotics and/or monetary proceeds derived from illegal drug trafficking activity during the course of his official duties. The subject parcel contained the recipient address as 1823 Minor Ave., Seattle, WA 98101, APT 3903, (Subject Premises 5) to "Devion." The subject parcel was postmarked on March 24, 2025, with a return address of 711 S. Vermont Ave., Los Angeles, CA 90005, to "EBAY: Hill St Comics."

COMPLAINT - 8
*United States v. Buffington*

16.     USPS databases revealed that the recipient address had been receiving a significant pattern of approximately 30 priority mail/priority mail express shipments from Los Angeles, CA dating back to February 23, 2024. These packages contained various combinations of "Davion" as the recipient, including "Devion B", "Devin B", Devon B", and "Dev B". PI Caldwell suspected that these names are all aliases of Buffington, who is associated with APT 3903. PI Caldwell also believed that based off his training and experience that Los Angeles, CA is a source location for illicit drugs.

17.     On March 28, 2025, PI Caldwell intercepted the subject parcel at the Midtown Seattle Post Office located at 301 Union St., Seattle, WA 98101 and removed it from the mail stream. U.S. Customs and Border Protection (CBP) Officer Brian Jones and his canine partner, "NICO", assisted PI Caldwell with intercepting the subject parcel to detect for the odor of narcotics. Canine NICO gave a positive response to detecting the odor of narcotics on the subject parcel.

18.     On April 1, 2025, PI Caldwell applied for and was granted federal search warrant MJ25-182 in the Western District of Washington for the subject parcel. On that same day, PI Caldwell executed the federal search warrant on the subject parcel in the presence of U.S. Postal Inspection Service Analyst William Cox. PI Caldwell recovered 11.7 grams of suspected Oxycodone in a pill bottle within the subject parcel.

19.     This is significant because the address 1823 Minor Ave., Seattle, WA, APT 3903 is the address on file with the Washington State Department of Licensing (DOL) for Buffington. It should also be noted that the previously mentioned wire interception between Buffington and Moss on March 10, 2025, appeared to be them discussing the transaction of Oxycodone. This leads investigators to believe that Buffington is likely distributing prescription Oxycodone and having the narcotics mailed to him at his listed residential address.

<u>Buffington delivers narcotics to Williams and Woods</u>

20.     On March 28, 2025, investigators conducted physical surveillance on Garry Williams and Dominique Woods in Pierce County, WA. Woods was driving a black

COMPLAINT -9
*United States v. Buffington*

UNITED STATES ATTORNEY
1201 PACIFIC AVE SUITE 700
TACOMA, WASHINGTON 98422
(253) 428-3800

Cadillac Escalade registered to him, and Williams was in the passenger seat. Investigators followed them to a parking lot at Stewart Street and Minor Avenue in the city of Seattle. Investigators then observed Buffington in this parking lot in a silver 2018 Mercedes sedan bearing license plate CA/9PKC730. This vehicle is registered to Buffington, and this parking lot is in the direct vicinity of Buffington's listed residence, 1823 Minor Ave., Seattle, WA, APT 3903. Investigators then observed Buffington go to the driver's door of Woods' Escalade and hand him a white bag. After almost twenty minutes, Woods and Williams left in the Escalade while Buffington left in his Mercedes.

21.    From my training and experience, the exchange of the white bag between Buffington and Woods is indicative of a hand-to-hand drug transaction. This method of hand-to-hand drug dealing has been observed by the Moss DTO throughout the course of this investigation. Additionally, Woods and Williams drove from Lakewood to downtown Seattle to meet with Buffington for less than twenty minutes, where Buffington immediately handed them the white bag. Investigators believe that their travel to a different county and meeting for such a brief amount of time to meet with Buffington is also suggestive that the interaction was a drug transaction.

<u>Search of Dominique Buffington's Residence</u>

22.    Buffington's registered address with the Washington State Department of Licensing (DOL) is listed as 1823 Minor Ave., Seattle, WA, APT 3903. On August 19, 2025, a federal search warrant was authorized for Buffington's house and his vehicle, a silver Mercedes Benz S450 with a California license plate 9PKC730.

23.    Investigators located a firearm, a loaded Glock .45 Model 30S with a full magazine and a round in the chamber in the trunk of Buffington's vehicle. The vehicle was located in the parking garage of his apartment complex. Buffington admitted that he was leasing the Mercedes and investigators are not aware of any other drivers.

COMPLAINT -10
*United States v. Buffington*

UNITED STATES ATTORNEY
1201 PACIFIC AVE SUITE 700
TACOMA, WASHINGTON 98422
(253) 428-3800

24.     ATF Special Agent Kit Radosevich looked at the firearm and determined that it was not manufactured in Washington State, therefore it was shipped in interstate commerce.

25.     In 2015, Buffington was convicted of manufacturing/delivering controlled substances and possession of a stolen firearm in Thurston County Superior Court. He was sentenced to over a year in department of corrections custody under cause number 14-1-00243-6, and cannot legally posses firearms.

## CONCLUSION

26.     Based on the above facts, I respectfully submit that there is probable cause to believe that DOMINIQUE D. BUFFINGTON committed violations of 18 U.S.C. 922(g)(1).

*Cody White*

_____
Cody White
Task Force Officer
Federal Bureau of Investigation


The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on August 20, 2025. Based on the complaint and sworn affidavit, the Court finds that there is probable cause to believe that the defendant committed the offenses set forth in the complaint.

_____
The Honorable David W. Christel
United States Magistrate Judge

COMPLAINT -11
*United States v. Buffington*